TARA N., by her Guardian ad Litem, Lee Kummer, and Donna N., Plaintiffs-Appellants,†

v.

ECONOMY FIRE & CASUALTY INSURANCE COMPANY and David and Mary N., Defendants-Respondents.

Court of Appeals

*No. 94–3131. Submitted on briefs July 28, 1995.—Decided September 27, 1995.*

(Also reported in 540 N.W.2d 26.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael E. Lambert*, of Manitowoc.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael P. Konz*, of *McCanna, Konz, Dudas & Assoc., S.C.*

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. During a divorce action between her parents, Tara N., a minor, was sexually assaulted by her father during a visitation period at the home of the father's parents. Tara and her mother, Donna N., brought this civil action against the parents and their homeowner's insurer, Economy Fire & Casualty Insurance Company, alleging that the parents had negligently failed to supervise the visitation. Tara sought damages for her physical and psychological injuries, and Donna sought damages for her derivative claims of loss of consortium, medical expenses for Tara's treatment and loss of earning capacity.

The issue on appeal is whether Economy's policy covers the claims. We affirm the trial court's ruling that coverage was barred under the policy's sexual

assault exclusion provision. We therefore affirm the judgment dismissing the action against Economy.[1]

## FACTS

Following the father's criminal conviction for the sexual assault, Tara and Donna commenced this action against the father's parents and Economy. The complaint alleges the following facts. Tara was born in 1986. Donna filed for divorce from Tara's father in December 1990. During the divorce proceedings, Donna suspected that her husband had been sexually abusing Tara. As a result, Donna obtained an order from the family court directing that all visitations between Tara and her father be supervised by appropriate persons. The court designated the father's parents as appropriate supervisors of any visitations between Tara and her father.

The parents agreed to supervise a visitation between Tara and her father on August 14, 1991, and to be present at all times. During the visit, the parents failed to supervise the visitation and left Tara alone with her father, who subsequently sexually abused her. As a result, Tara suffered physical and psychological damages. The complaint alleged that the parents were negligent in their supervision of the father's visit with Tara.

Tara sought damages, inter alia, for her physical and psychological injuries and for her future medical and psychological treatment costs. Donna sought damages for her derivative claims, including the medical costs relating to Tara's past treatment, loss of earning capacity, and loss of Tara's consortium, society and companionship.

---

[1] The action continues against the father's parents.

Economy defended on the grounds that its policy did not provide coverage for Tara's and Donna's claims. Economy sought a summary judgment declaratory ruling, arguing that it had no duty to defend the father's parents because the policy specifically excluded coverage for bodily injury arising out of a sexual act which is "expected, anticipated, foreseeable or intended by an insured."[2]

In making its ruling, the trial court first considered the coverage provisions of the policy, although Economy had not relied upon those provisions in denying coverage. The trial court determined that the provisions covered only bodily injury damages. Thus, the court held that Donna's derivative claims were barred since she had not suffered any bodily injury.

It is not clear to us, however, whether the trial court's bench decision was also addressing Tara's claim for psychological damage.[3] However, on appeal, Economy interprets the court's ruling as also covering this aspect of Tara's claim, and Economy defends the court's ruling on this basis. We therefore address the court's ruling on the premise that the court was speaking to Tara's claim for psychological damage.

Despite our uncertainty regarding the foregoing point, it is clear that the trial court's coverage ruling did not bar Tara's bodily injury claim. Therefore, the court went on to address Economy's argument that the

---

[2] The trial court's ruling determined that the father was an insured under the policy because he was a resident of the parents' household. Economy does not quarrel with this ruling.

[3] Tara's attorney attempted to clarify this point with the trial court at the conclusion of the hearing. Despite this attempt, we remain uncertain from our examination of the trial court's remarks whether it intended to include Tara's claim for psychological damage in its ruling.

sexual assault exclusion provisions of the policy barred coverage of all the claims asserted by both Tara and Donna. The court held that the policy excluded liability for bodily injury arising out of a sexual act. The court therefore dismissed Economy from the action. Tara and Donna appeal.

## DISCUSSION

### *Standard of Review*

The trial court's grant of summary judgment presents an issue of law which we review de novo by applying the same methodology as the trial court. *See Taryn E.F. v. Joshua M.C.,* 178 Wis. 2d 719, 722, 505 N.W.2d 418, 420 (Ct. App. 1993). Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS.

Here, the facts are undisputed. Thus, the issue narrows to the interpretation of Economy's policy and the application of the policy to the undisputed facts. The interpretation of an insurance contract is a question of law for our independent review. *See Taryn E.F.,* 178 Wis. 2d at 722, 505 N.W.2d at 420.

### *Coverage Provisions*[4]

We begin with the coverage provisions of the Economy policy:

---

[4] Because our decision in this case ultimately rests on the meaning of "bodily injury" in the exclusion provisions rather than the coverage provisions of the policy, it may appear at first blush that we need not address the coverage provisions. However, as the ensuing discussion will reveal, our interpreta-

84

**COVERAGE E — Personal Liability**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

**1.** pay up to our limit of liability for the damages for which an **insured** is legally liable . . . .

In addition, the policy defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results."

Economy argues that this coverage provision clearly and unambiguously covers only Tara's bodily injury—not her psychological injury. The parties have not cited to any reported Wisconsin case which has determined whether the nonphysical damage claims of a person who has suffered physical injury are included within the concept of "bodily injury."[5] Nor has our own research uncovered such a case.

However, we find persuasive the reasoning of the Court of Appeal of Louisiana when it considered the

---

tion of the meaning of "bodily injury" for purposes of the exclusion clause depends in large measure on the meaning we assign the phrase for purposes of the coverage clause. Therefore, this portion of our opinion is essential to our *ratio decidendi* and is not dicta.

[5] Wisconsin has recognized that derivative claims of third parties such as loss of consortium and medical expense liability are not bodily injury for purposes of a limit of liability provision in an insurance policy. *Richie v. American Family Mut. Ins. Co.*, 140 Wis. 2d 51, 55-58, 409 N.W.2d 146, 147-48 (Ct. App. 1987). *Richie* does not govern the issue here because we are addressing the scope of "bodily injury" as it applies to the party who sustained the physical injury—not the derivative claims of third parties.

issue of whether bodily injury encompassed emotional harm:

> We attach significance to the fact that the policy defines bodily injury to mean "sickness or disease" in the instant case. These broad terms must include mental distress which persists over a period of time and necessitates the taking of some medication and interferes with one's performance at work. In this regard, the policy . . . seems to be broader than it would have been had that definition not included the words "sickness or disease." . . .
>
> We are unable to separate a person's nerves and tensions from his [or her] body. It is common knowledge that worry and anxiety can and often do have a direct effect on other bodily functions.

*Levy v. Duclaux,* 324 So. 2d 1, 10 (La. Ct. App. 1975).

We also note that in Wisconsin, bodily injury has been considered to be broader than physical injury, although not in situations directly considering the issue in this case. In *Acharya v. Carroll,* 152 Wis. 2d 330, 337, 448 N.W.2d 275, 279 (Ct. App. 1989), the court stated, "[t]he term 'injuries to the person' connotes *bodily injuries, whether physical or emotional.*" (Emphasis added.) We further observe that in the criminal restitution statute, a showing of bodily injury allows the court to require the defendant to pay an amount equal to the cost of "necessary medical and related professional services and devices relating to physical, psychiatric and psychological care and treatment." Section 973.20(3)(a), STATS.

While the resolution of this issue has received varied treatment in different jurisdictions, we deem it more reasonable that the term "bodily injury" encompasses claims for emotional or psychological harm. *See State Farm Fire & Casualty Co. v. Pickard,* 849 F.2d

1220, 1221-22 (9th Cir. 1988) (comparing cases which have included nonphysical harm with those that have excluded such harm in construing "bodily injury" in an insurance policy). *See generally* Gregory G. Sarno, Annotation, *Homeowner's Liability Insurance Coverage of Emotional Distress Allegedly Inflicted on Third Party by Insured,* 8 A.L.R.5th 254 (1994).

Mental, emotional or psychological conditions are commonly considered as sickness or disease by both lay persons and medical professionals. Such conditions are routinely treated by medical personnel employing medical procedures. A reasonable insured would understand such conditions to be included within the concepts of "sickness or disease" which the policy uses to define "bodily injury." *See School Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis. 2d 347, 367, 488 N.W.2d 82, 88-89 (1992). Thus, we conclude that Tara's psychological injury was covered as a "bodily injury" under the policy.

We reject Economy's coverage argument on a further basis which impacts the claims of both Tara and Donna. The coverage provision is broken out into two segments. The first segment reads, "*If* a claim is made . . . for damages because of **bodily injury** . . . ." (First emphasis added.) This clause does not require Economy to pay for bodily injury. Rather, it requires a bodily injury *as a condition of Economy's coverage.* This is a subtle, but important, distinction.

If this condition of coverage is satisfied, then the second segment of the provision comes into play. This segment recites Economy's payment obligation: "*we will . . . pay up to our limit of liability for the damages for which an* **insured** *is legally liable.*" (Emphasis

added.) Notably, this segment does not limit Economy's obligation to pay only bodily injury damages. Instead, it requires payment for all amounts (up to the limits of liability) for which "an **insured** is legally liable." This obviously would include all claims of the person who actually suffered the bodily injury and those derivative claims of third parties. Under the facts of this case, this would include all claims of both Tara and Donna.

The coverage clause at issue in this case is commonly included in liability insurance policies. We are to read insurance policies to further the insured's reasonable expectations of coverage while meeting the intent of both parties to the contract. *Benjamin v. Dohm*, 189 Wis. 2d 352, 359, 525 N.W.2d 371, 374 (Ct. App. 1994). Were we to accept Economy's argument, an insured would not be covered against claims for nonphysical injury or damage which an injured party often sustains. In addition, the insured would not be covered against third-party derivative claims which also often result from a bodily injury. A reasonable insured would not understand that a conventional homeowner's policy with this coverage provision would leave the insured with such substantial uninsured exposure. *See School Dist. of Shorewood*, 170 Wis. 2d at 367, 488 N.W.2d at 88-89.

For the same reasons, we conclude that our interpretation does not bind Economy to a risk which it did not contemplate and for which it did not receive a premium. *See Reznichek v. Grall*, 150 Wis. 2d 752, 758, 442 N.W.2d 545, 548 (Ct. App. 1989).

For these collective reasons, we disagree with the trial court's construction of the policy's coverage provisions. We hold that Tara's claim for psychological

injury and Donna's derivative claims are covered by these provisions.

## *Exclusion Provisions*

We now turn to the trial court's further ruling that the exclusion provisions of the policy preclude coverage in this case. This provision reads:

> **1.   Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to **bodily injury** or **property damage:**
>
> a.   which is expected, anticipated, foreseeable or intended by any **insured;**
>
> . . . .
>
> j.   arising out of any sexual act, including but not limited to molestation, incest or rape.

We will address this argument only in the context of Tara's claims because, if those claims are barred, it follows that Donna's derivative claims, although separate, are also barred. A derivative claim, although separate, depends on whether the party actually injured sustained a compensable injury. *See Utecht v. Steinagel,* 54 Wis. 2d 507, 515, 196 N.W.2d 674, 679 (1972). An exclusion provision which excludes the act of the wrongdoer also operates to exclude coverage for the parents' alleged negligent supervision or control of the wrongdoer. *See Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis. 2d 469, 477-84, 329 N.W.2d 150, 153-57 (1983).

Tara concedes that the exclusion clause expressly bars coverage of her bodily injury claim. She argues, however, that because the clause is silent as to other

89

forms of injury, her claim for psychological harm is not barred.[6]

However, we have already held in the preceding discussion that "bodily injury" as defined in the policy is not limited to just physical bodily harm, but includes other conditions of sickness and disease, including psychological injury. Were we to adopt Tara's argument, we would impose a different definition of "bodily injury" for the exclusion provision of the policy from that which we have adopted for the coverage portion of the policy.

We are mindful of the rule that an exclusionary clause in an insurance contract is strictly construed against the insurer. *See Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 746, 456 N.W.2d 570, 573 (1990). However, an insurance contract must also be inter-

---

[6] Economy first argues that *Taryn E.F. v. Joshua M.C.*, 178 Wis. 2d 719, 505 N.W.2d 418 (Ct. App. 1993), governs this case. There, the court of appeals held that a somewhat similar sexual molestation exclusion clause barred the victim's action against the insurer of the perpetrator's parents. *Id.* at 723-27, 505 N.W.2d at 420-22. The exclusion clause in *Taryn* barred the claim if the act was committed by "any insured." *Id.* at 723, 505 N.W.2d at 420. Thus, the focus of the inquiry in *Taryn* was the reach of the phrase "any insured." The court concluded that the use of the word "any" served to exclude the claim, even though the action was brought against the parents of the perpetrator. *Id.* at 727, 505 N.W.2d at 422.

Here, however, the focus of the argument is on the reach of the phrase "bodily injury," not "any insured" as in *Taryn*. Thus, Tara does not dispute that her claim for bodily injury is excluded under *Taryn*. Instead, she contends that her claim for psychological injury is covered because it is not a "bodily injury." This is a different argument than that made in *Taryn*. Therefore, *Taryn* does not govern the issue.

preted to mean what a reasonable person in the position of the insured would have understood the words of the contract to mean. *School Dist. of Shorewood*, 170 Wis. 2d at 367, 488 N.W.2d at 88-89. And, we properly look to the entire policy when construing a particular provision of a policy. *See Reznichek*, 150 Wis. 2d at 757, 442 N.W.2d at 548. Our interpretation produces a consistent application of the phrase "bodily injury" throughout the policy. *See State Farm*, 849 F.2d at 1222.

The policy definition of "bodily injury" is generic to the entire policy. We properly apply that definition throughout the policy unless the context of the phrase in a particular provision calls for a different definition. We see nothing in the exclusion clause which expressly or inferentially suggests that the phrase "bodily injury" means something different than that which the policy assigns to it.[7]

Tara's claims against Economy are therefore barred by the exclusion provisions of the policy. Since Donna's claims are derivative of, and dependent upon, the vitality of Tara's claims, her claims against Economy are also barred.

*By the Court.*—Judgment affirmed.

[7] In light of our holding that the exclusion provisions of the policy bar coverage, we need not address Economy's further argument that the principle of fortuitousness also bars coverage. *See Hagen v. Gulrud*, 151 Wis. 2d 1, 4, 442 N.W.2d 570, 571-72 (Ct. App. 1989).