Lawrence D. LEDMAN and Barbara Ledman, Plaintiffs-
Respondents,†

v.

STATE FARM MUTUAL AUTOMOBILE INS. CO., Defendant-
Appellant.

Court of Appeals

*No. 98–0267. Oral argument May 12, 1999.—Decided August
17, 1999.*

(Also reported in 601 N.W.2d 312.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas E. Goss, Jr.* of *Mueller, Goss & Possi, S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Timothy S. Trecek* of *Habush, Habush, Davis & Rottier, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

WEDEMEYER, P.J.   State Farm Mutual Automobile Ins. Co. appeals from an order granting a declaratory judgment to Lawrence D. Ledman and his wife, Barbara Ledman. The judgment declared that a policy of insurance issued to the Ledmans provided uninsured motorist coverage to them for their wrongful death claim arising from the death of their adult emancipated daughter, Catherine Ledman. It further granted them actual attorney's fees incurred in pursuing their claim for declaratory relief.

State Farm claims that the trial court erred in construing the provisions of the policy in the Ledmans' favor and in awarding them actual attorney's fees. Because the trial court's interpretation of the uninsured motor vehicle provisions would lead to an absurd result, we reverse.

## BACKGROUND

On March 10, 1996, Catherine, the thirty-year-old daughter of the Ledmans, was driving an automobile, owned by her fiancé, which was struck by another vehicle operated by an uninsured motorist. Catherine died as a result of the injuries sustained in the accident. At the time of the accident, Catherine, who resided in Irma, Wisconsin, had not lived with her parents for over a year and a half.

The Ledmans, who live in Brownsville, Wisconsin, owned a 1994 Ford van which was insured by State Farm. This vehicle was not involved in the accident. The policy contained uninsured motor vehicle provisions, under which the Ledmans made a claim for the death of Catherine. When State Farm denied coverage on the uninsured motorist claim, the Ledmans filed a declaratory judgment action. After State Farm answered the complaint denying liability, the Ledmans filed a motion for judgment.

The Ledmans argued that the disputed provisions of the policy clearly provide that State Farm "will pay damages[,] for 'bodily injury' to a 'person'[,] that an 'insured' is legally entitled to collect from the owner or driver of a[n] uninsured motor vehicle." In reply, State Farm argued that the applicable policy language required that bodily injury must be incurred by an insured before there is coverage. In an oral decision, the trial court ruled that the relevant policy language was unambiguous and the Ledmans were insureds legally entitled to collect from an owner or driver of an uninsured motor vehicle. The court also ruled that they were entitled to recover actual attorney's fees under § 806.04(8), STATS.[1] State Farm now appeals.

---

[1] In rendering its decision, the trial court orally declared:

## ANALYSIS

*A.  Coverage Determination.*

The interpretation of an insurance contract and the conclusion as to whether coverage exists under a given contract are questions of law which we review independently. *See Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis. 2d 77, 84, 540 N.W.2d 26, 29 (Ct. App. 1995). We interpret an insurance contract "to mean what a reasonable person in the position of the insured would have understood the words of the contract to mean." *Id.* at 90–91, 540 N.W.2d at 32. In the process, we utilize the same rules of construction that we apply to other contracts. *See Allstate Ins. Co. v. Gifford*, 178 Wis. 2d 341, 346, 504 N.W.2d 370, 372 (Ct. App. 1993). "The policy language, as the agreed-upon articulation of the bargain reached between the parties, is dispositive to the extent it is plain and unambiguous." *Id.* If the terms of an insurance contract " 'are plain on their

In reviewing the portions of the policy, the court finds no ambiguity in the policy's term stating that the plaintiffs would be reimbursed for damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle.

In the court's view, a reasonable person understands this to mean that damages suffered resulting from the acts of a driver of an uninsured motor vehicle are compensable. While this interpretation appears to be a question of first impression in Wisconsin, this interpretation of uninsured motorist coverage as applied in wrongful death actions is not without precedent, *Lambert [v.] State Farm Mutual Auto Insurance Company*.

Based on the court's reasoning, the court concludes that the plaintiffs are entitled to recover pecuniary loss sustained in the death of their daughter Catherine under the State Farm policy at issue. . . .

As to attorney['s] fees, this court finds that the movant is entitled to attorney['s] fees under 806.04(8) of the statutes . . . .

61

face, the policy must not be rewritten by construction.' " *Id.* (quoted source omitted).

An insurance contract "is to be construed so as to give effect to the intentions of the [contracting] parties." *Kennedy v. Washington Nat'l Ins. Co.*, 136 Wis. 2d 425, 428, 401 N.W.2d 842, 844 (Ct. App. 1987). The policy "must be considered as a whole to give reasonable meaning to every provision." *Berg v. Schultz*, 190 Wis. 2d 170, 175, 526 N.W.2d 781, 782 (Ct. App. 1994). "A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent." *Inter-Insurance Exch. v. Westchester Fire Ins. Co.*, 25 Wis. 2d 100, 106, 130 N.W.2d 185, 188 (1964).

When a policy is clear and unambiguous on its face, the terms of that policy "should not be rewritten by construction to bind an insurer to a risk . . . it [never] contemplate[d] or [was willing] to cover, and for which it was never paid." *Limpert v. Smith*, 56 Wis. 2d 632, 640, 203 N.W.2d 29, 33–34 (1973). "[A] clear contractual provision must be construed as it stands." *American States Ins. Co. v. Skrobis Painting and Decorating, Inc.*, 182 Wis. 2d 445, 450–51, 513 N.W.2d 695, 697 (Ct. App. 1994). "While . . . we must construe . . . exceptions that tend to limit liability . . . strictly against the insurer, . . . strict construction does not permit strained construction." *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 264, 371 N.W.2d 392, 394 (Ct. App. 1985). "Insurance policies should be given a reasonable interpretation and not one that leads to absurd results, and construction should not bind an insurer to

a risk it did not contemplate." *Thompson v. Thresher-men's Mut. Ins. Co.*, 172 Wis. 2d 275, 282, 493 N.W.2d 734, 737 (Ct. App. 1992) (citations omitted).

State Farm claims that the trial court erred as a matter of law in three respects: (1) it did not apply the entire definition of the defined term "uninsured motor vehicle"; (2) it did not construe the policy as a whole; and (3) it interpreted the uninsured motor vehicle provisions in such a way as to lead to an absurd result.

In response, the Ledmans claim the language relating to uninsured motorist coverage clearly provides that State Farm is obligated to pay damages, for bodily injury, that an "insured" is legally entitled to collect from an owner or driver of an uninsured motor vehicle. They argue that because of § 895.04, STATS., Wisconsin's wrongful death statute, as parents of Catherine, they are permitted to recover damages for the loss of society and companionship of their deceased daughter plus medical expenses, funeral expenses and related charges incurred as a result of her death. They maintain that their daughter's death satisfied the definition of "bodily injury" set forth in the policy, which reads: "Bodily injury-means bodily injury to a person . . . or death which results from it." The policy defines "person" as "a human being." They then reason that because "bodily injury" is not limited to injury to or death of an "insured," but is more expansive and includes, as in this case, death of a "person," they are entitled to coverage. The Ledmans' logic has appeal, but it also contains some fatal flaws. Thus, we are not convinced.

At the outset of our analysis, it is helpful to note that no one maintains that the provisions of the policy under examination are ambiguous. Additionally, no

63

one claims that the deceased daughter was an "insured" under the Ledmans' policy.

Both parties, in advancing their respective arguments, cite the policy's uninsured motor vehicle payment provision which reads: "We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*" (emphasis in original).

The Ledmans claim that because they are the first person named in the declarations and his or her spouse, they are insureds as the term "insured" is used in the policy's uninsured motor vehicle coverage provision. To support their contention, the Ledmans argue that "if the uninsured motor vehicle coverage provision . . . was intended to only pay damages for bodily injury [incurred by] an 'insured,' [State Farm] could have clearly set forth such a limitation." The Ledmans, however, ignore the definition of an "uninsured motor vehicle," and cite no authority necessitating that any limitation as suggested by them be contained within the definition of "bodily injury."

Within the provisions of the State Farm policy, the term "uninsured motor vehicle" is defined as follows:

*Uninsured Motor Vehicle*—means:

1.   a land motor vehicle, the ownership, maintenance or use of which is:

   a.   not insured or bonded for bodily injury liability at the time of the accident; or

  b.  insured or bonded for bodily injury liability at the time of the accident; but

    (1)  the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

    (2)  the insuring company denies coverage or is or becomes insolvent; or

 2.  a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:

  a.  the *insured* or

  b.  the vehicle the *insured* is *occupying*

 and causes *bodily injury* to the *insured*. [2]

(Emphasis in original.) It is a lengthy definition consisting of two main parts describing two types of vehicles which qualify as uninsured vehicles. Each type of vehicle is further described by relative clauses. Notwithstanding the Ledmans' position to the contrary, we conclude that the definition of an "uninsured motor vehicle" is one long sentence consisting of a series of disjunctives and one conjunctive within the relative clauses. Synthesizing the components of the

---

[2] We have set forth the definition of "uninsured motor vehicle" as printed in the policy. We note that the Ledmans' spacing in their brief on page 13 is not an exact replication of the policy, thereby supplying the basis for their argument that the bodily injury requirement is limited to a "hit-and-run" vehicle. We trust this is "scrivener's error."

definition pertinent to this case, the sentence reads: Uninsured motor vehicle means a land motor vehicle the ownership or use of which is not insured for bodily injury liability at the time of the accident, or a hit-and-run land motor vehicle whose owner or driver remains unknown and which strikes the insured or the vehicle the insured is occupying, and causes bodily injury to the insured.

Whether one reads the policy definition as properly spaced and aligned per the policy format, or the synthesized version, the only reasonable reading is that for a vehicle to be uninsured, it must have caused bodily injury to an insured.

The remaining bases for State Farm's claim of trial court error are the failure to construe the policy as a whole and the consequent effect of producing an absurd result. We first review the policy as a whole to ensure that pertinent provisions are given a reasonable meaning. *See Berg*, 190 Wis. 2d at 175, 526 N.W.2d at 782.

In the coverage section, for one to qualify as an insured, one must be "any person entitled to recover damages because of bodily injury to an insured." Under exclusion provisions contained in various parts of the coverage section, there exist three provisions precluding uninsured motorist coverage: (1) "for bodily injury to an insured while occupying or through being struck by a newly acquired car if other uninsured motor vehicle or underinsured motor vehicle coverage applies"; (2) "for bodily injury to an insured resulting from the use of a motor vehicle owned or leased by you, your spouse or your relative who resides primarily in your household if it is not insured for this coverage under this policy"; and (3) in circumstances where other uninsured motorist coverage exists by virtue of the

accident, bodily injury to the insured is required.[3] (Emphasis omitted.)

From this review, not undertaken by the trial court, it is obvious that there is an expected nexus of bodily injury to the insured as part of the overall general scheme and intent of the uninsured motor vehicle provisions of State Farm's policy. To accept the

---

[3] The "If There Is Other Uninsured Motor Vehicle Coverage" provision of the policy provides:

> Regardless of the number of policies involved, vehicles involved, *persons* covered, claims made, vehicles insured, or premiums paid, the limits for uninsured motor vehicle coverage under this policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limits of uninsured motor vehicle coverage available for *bodily injury* suffered by an *insured* in any one accident.

Subject to the above:

1. If the *insured* sustains *bodily injury* as a pedestrian and other uninsured motor vehicle coverage applies:

   a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

   b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident.

2. If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned or leased by *you, your spouse* or *your* relative who resides primarily in *your* household, then this coverage applies:

   a. as excess to any uninsured motor vehicle coverage which applies to the vehicle or driver as primary coverage; but

   b. only in the amount by which it exceeds the primary coverage.

(Emphasis in original.)

Ledmans' assertion that "the bodily injury to an insured" requirement only applies in the "hit-and-run" setting, neutralizes the first part of the definition of an "uninsured motor vehicle," contrary to the dictates of *Berg. See id.* We are constrained by precedent from producing such a result.

There is an accompanying and even more persuasive reason not to accept the Ledmans' analysis, and that is the unreasonable results it would produce. The definition of an uninsured motor vehicle is of a unitary nature in which land motor vehicles of two different types of characterization can be deemed uninsured. To maintain that the "bodily injury to an insured" requirement only applies to a hit-and-run situation would create an internal inconsistency for which no logical basis has been propounded. In construing insurance contracts, unreasonable results are not looked upon with favor.

Finally, we conclude that a reasonable person in the position of the insured would not believe that uninsured motorist coverage would provide for the damages suffered under the circumstances here. Uninsured motorist insurance is purchased to provide an insured with protection against damages for bodily injury suffered at the hands of the owner or driver of an uninsured motor vehicle. Although the Ledmans undoubtedly have been emotionally harmed by the uninsured driver, they did not suffer bodily injury. To construe the policy to provide coverage under the circumstances here would mean imposing a risk on State Farm for which no premium was paid. *See Thompson,* 172 Wis. 2d at 282, 493 N.W.2d at 737 (policy should be given reasonable interpretation and not bind an insurer to risk it did not contemplate). The uninsured

motorist coverage under the policy cannot be stretched so far as the Ledmans request.

Thus, based on the foregoing analysis, we conclude that the trial court erred when it declared coverage existed for the wrongful death of the Ledmans' daughter under the Ledmans' automobile insurance uninsured motor vehicle provisions. Because the policy, when read as a whole, requires bodily injury to an insured, there is no coverage under the uninsured motor vehicle provisions. The Ledmans, although undoubtedly having suffered a tremendous loss, have not sustained a bodily injury. This conclusion is supported by the damages alleged: loss of society and companionship, medical expenses and funeral expenses. Therefore, we reverse the declaratory judgment and remand to the trial court to enter judgment in favor of State Farm.

*B. Attorney's Fees.*

State Farm also contends that the trial court erred in awarding attorney's fees. We agree. Whether an insured can recover attorney's fees is a question of law that we decide independently. *See Dechant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 568, 547 N.W.2d 592, 595 (1996).

State Farm is not obligated to pay the Ledmans' attorney's fees here for two reasons: (1) we have declared that there is no coverage for the Ledmans' claim under the uninsured motor vehicle provisions of the automobile policy; and (2) attorney's fees should only be awarded when an insurer breaches its duty to defend. *See id.* at 569, 547 N.W.2d at 595–96

69

First, as determined by this opinion, State Farm's policy does not provide coverage because the Ledmans, as insureds, did not suffer a bodily injury. Therefore, they have not established that coverage exists under the policy.

Second, to the extent that the trial court awarded attorney's fees under *Elliott v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992), such ruling was erroneous. In *Elliott*, the court determined that the insured was entitled to an award of attorney's fees incurred because the insurer breached its duty to defend. *See id.* at 324–25, 485 N.W.2d at 409. That is not the case here. There was no breach of a duty to defend. Further, our supreme court has declared that *Elliot* should not be extended "beyond its particular facts and circumstances." *Dechant*, 200 Wis. 2d at 569, 547 N.W.2d at 595. Attorney's fees should only be awarded in limited circumstances: when an insurer breaches its duty to defend an insured. *See id.*

The limited circumstances do not exist here. State Farm did not breach its duty to defend. Therefore, the trial court erred when it ordered State Farm to pay the Ledmans' attorney's fees. Accordingly, this part of the order is also reversed.

*By the Court.*—Order reversed and cause remanded with directions.

SCHUDSON, J. *(concurring)*. Although I agree with the majority decision, I do not join in the opinion. Accordingly, I respectfully concur.